[Cite as *McNichols v. McNichols*, 2013-Ohio-4935.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CONNIE S. McNICHOLS | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| KENNEY W. McNICHOLS | : | Case No. 13-CA-28 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 2010 DR 803



JUDGMENT:                       Affirmed



DATE OF JUDGMENT:               November 6, 2013



APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

CHRISTOPHER M. SHOOK                     KENNETH J. MOLNAR
33 West Main Street                      JOHN R. CORNELY
P.O. Box 4190                            21 Middle Street
Newark, OH  43058-4190                   P.O. Box 248
                                         Galena, OH  43021

*Farmer, P.J.*

{¶1}   On June 5, 1971, appellant, Kenney McNichols, and appellee, Connie McNichols, were married.  On May 20, 2010, appellee filed a complaint for divorce.  A final hearing commenced on May 22, 2012.  By judgment decree of divorce filed January 25, 2013, the trial court granted the divorce and ordered appellant to pay appellee $800.00 per month for spousal support.  A nunc pro tunc judgment decree of divorce to correct three scriveners errors was filed on March 1, 2013.

{¶2}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶3}   "THE TRIAL COURT ERRED IN REQUIRING APPELLANT TO PAY APPELLEE THE SUM OF EIGHT HUNDRED DOLLARS ($800.00) PER MONTH IN SPOUSAL SUPPORT."

II

{¶4}   "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING APPELLEE SPOUSAL SUPPORT AS TO THE AWARD ITSELF, AND THE AMOUNT OF THE AWARD, THE SAME BEING UNJUST AND INEQUITABLE."

I, II

{¶5}   Appellant claims the trial court's award of spousal support to appellee, both as to its appropriateness and its amount, was an abuse of discretion and against the manifest weight of evidence.  We disagree.

{¶6}   A trial court has broad discretion in determining a spousal support award. *Neville v. Neville,* 99 Ohio St.3d 275, 2003–Ohio–3624; *Stevens v. Stevens,* 23 Ohio

St.3d 115 (1986). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶7} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶8} R.C. 3105.18 governs spousal support. Subsection (C) states the following:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶9}    In its nunc pro tunc judgment decree of divorce filed March 1, 2013, the trial court awarded appellee $800.00 a month in spousal support to be permanent in nature, and was explicit in its detail on the issue:

*a) Income of the parties from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under Section 3105.171 of the Revised Code:*

Plaintiff is not currently employed due to health reasons.  Plaintiff testified that at her last place of employment, A-Oak Farms, she earned $9.00 per hour and averaged 25 hours per week.  This job consisted of manual labor arranging and caring for plants and flowers in various hotels and office buildings.  Plaintiff earned $36,122.00 in 2010 ($30,522.00 from spousal support), and $2,912.00 in 2011.

The defendant was employed as the owner of McNichols Roofing, Inc. and its subsidiaries from 1989 until December 2010 when the company filed for bankruptcy.  Prior to 2010, the defendant testified he earned an average of approximately $62,000.00 per year and paid personal expenses from company accounts.  The defendant testified that

in 2010 he paid himself a salary of $756.87 per week, and his income tax return for 2010 indicated $31,150.00 in gross income. Defendant's 2011 income was $9,975.00, and he testified he earned $5,000.00 in 2012 as of the date of the trial.

The defendant is currently employed part-time as an inside sales representative for 84 Lumber. Defendant started this employment in June of 2012 and earns $8.00 per hour, plus commission. Defendant estimates his income to be approximately $25,000.00 per year.

*b) The relative earning abilities of the parties:*

The plaintiff has a GED and a master of gardening certificate. Plaintiff's most recent employment was physical labor caring for plants and landscapes, wherein she earned $9.00 per hour. During the parties' marriage, plaintiff was employed as a bookkeeper and secretary for McNichols Roofing.

The defendant has worked in the roofing industry for approximately thirty years. The defendant was the owner of a company, and is experienced in contracting for jobs and hiring people to do the work. The defendant testified that he lacks computer skills, and most jobs now require computer generated estimates and calculations.

\*\*\*

*n) Any other factor the Court expressly finds to be relevant and equitable:*

The plaintiff's income earning potential is greatly reduced due to her recent heart attack. Moreover, plaintiff has limited office skills and was most recently employed performing physical labor caring for plants and landscapes. While plaintiff currently receives assistance from her son in Georgia, she hopes the living arrangement is temporary and expects to pay $931.00 per month for housing expenses.

The defendant's income is reduced from when he owned the roofing company as he is currently working for a lumber supply company on a minimal wage and commission basis. The Court finds that the defendant has 25+ years of experience in the roofing and construction business, and therefore has the ability to earn more than he is currently is earning. The defendant should be able to leverage his past experience into a better paying position, even if he does not own his own company.

{¶10} A review of the record demonstrates that the parties, married since 1971, managed a successful roofing business, first from their home and later from a separate location. T. at 126, 150, 222. In fact, they owned subsidiaries, rental properties, and a marital residence. T. at 125, 139, 185-187, 204-207. Because of the economic downturn in 2010, the business failed, necessitating a corporate bankruptcy and the loss of basically all of their assets. T. at 224-225, 239-240, 281. As a result, appellant, as the primary provider, was virtually unemployed from 2010 to 2012. T. at 105, 108, 281-282. However, during this time period, appellant helped with small remodeling jobs for which he was compensated. T. at 104-107.

{¶11} Due to the filing of the divorce action, appellant's failure to pay temporary spousal support in 2010, and the subsequent foreclosure of the marital residence, appellee moved to Savannah, Georgia to live rent free in a home owned by her daughter-in-law. T. at 135-136, 159. While in Savannah, appellee obtained a job working twenty-five hours a week at $9.00 per hour maintaining interior plants and landscaping. T. at 161-162, 169. Appellee worked up until she suffered a heart attack. T. at 163-164. Thereafter, she lost her job because she could not obtain a work release due to being on blood thinners. T. at 165-166. Appellee's debts included a hospital bill of $38,000.00+ and a deficiency judgment on the foreclosed marital residence of $64,000.00+. T. at 171-172, 213-214. Appellant had filed for personal bankruptcy which freed him from the obligation on the marital residence deficiency judgment. T. at 239.

{¶12} Appellant recently obtained employment, with the ability to earn $25,000.00 per year if he worked full time. T. at 233-234. Appellant chose to give up the roofing business because he was unable to do the work and did not have "today's skills." T. at 109, 130, 231, 240-241. However, there was evidence that appellant facilitated his sister in her new roofing business, and he mysteriously was able to repay a $70,000.00+ loan in less than a year during the economic crisis at his business. T. at 57-59, 64, 249-251, 297-298, 301-304.

{¶13} The evidence demonstrates that appellee has few marketable skills and is unable to work verses appellant's choice not to return to his profession and his ability to obtain a moderate job. We find no error in the trial court determining that spousal support was appropriate given the forty-one year marriage.

{¶14} As explained by the Supreme Court of Ohio in *Kunkle v. Kunkle,* 51 Ohio St.3d 64 (1990), paragraph one of the syllabus:

> Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.

{¶15} Although the trial court did not set a date certain for termination of spousal support, it did set forth various grounds that would result in the termination of spousal support i.e., death of either party, appellee's remarriage or cohabitation with an unrelated adult male. In addition, the trial court expressly retained jurisdiction to modify the spousal support award upon a significant change of circumstances. *Shoemaker v. Shoemaker,* 5th Dist. Knox App. No. 00CA13, 2000 WL 1862835 (December 15, 2000).

{¶16} As for the $800.00 amount, appellant testified he was debt free because of the bankruptcies and had minimal living expenses as he was living with a female friend who "pays most of the bills." T. at 282. Appellee on the other hand had a $360.00 monthly car payment, a health care obligation of $38,000.00+, and the possibility of collection on the marital residence deficiency judgment ($64,000.00+). T. at 144, 171-172, 213-214. Appellee also will have to start paying rent. T. at 159-160.

{¶17}  The trial court ordered appellant to pay one-half of the marital residence deficiency judgment if appellee was required to pay it.   Appellant argues this order should impact spousal support; however, it was a division of marital debt under R.C. 3105.171.

{¶18}  Upon review, we find the evidence supports a spousal support award and the trial court did not abuse its discretion in awarding appellee $800.00 per month.

{¶19}  Assignments of Error I and II are denied.

{¶20}  The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Delaney, J. concur.


_____
Hon. Sheila G. Farmer


_____
Hon. John W. Wise


_____
Hon. Patricia A. Delaney


SGF/sg 1021

[Cite as *McNichols v. McNichols*, 2013-Ohio-4935.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CONNIE S. McNICHOLS | : | |
| Plaintiff-Appellee | : | |
| -vs- | : | JUDGMENT ENTRY |
| KENNEY W. McNICHOLS | : | |
| Defendant-Appellant | : | CASE NO. 13-CA-28 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed. Costs to appellant.

_____
Hon. Sheila G. Farmer

_____
Hon. John W. Wise

_____
Hon. Patricia A. Delaney